McFie, Parker, and McMillan JJ., concur; Crumpacker,
J., having tried the case below, did not participate in
this decision.

[906. February 25, 1901.]

JOHN H. BLAIN, Plaintiff in Error, v. ABRAHAM
STAAB, Defendant in Error.

SYLLABUS BY THE COURT.

1. CIVIL LAW—SERVITUDES.—Servitudes were as well known to the
civil law as easements were to the common law.

2. CONTRACT—CONSTRUCTION OF.—Where by the terms of a contract
the intent of the parties is clear and free from ambiguity and doubt
the intention must govern rather than the strict signification of the
language employed.

3. SERVITUDE—STREET—ABANDONMENT—EFFECT OF.—The abandon-
ment of a public street where the municipality had the right to use
for street purposes only will operate to extinguish the servitude.

4. SERVITUDE—EXTINGUISHMENT—EFFECT OF.—On the extinguish-
ment of such a servitude the owner of the fee is entitled to the im-
mediate possession of the premises embraced within the street.

*Error* from a judgment for plaintiff to the District Court of Santa Fe County.   Affirmed.

Statement of the case by the court.

In August, 1871, Luis Gold and Julian Perea, then being the owners of certain adjoining lands on the southerly side of San Francisco street, in the city of Santa Fe, united in a contract by which, for one dollar, they bargained and sold to the probate judge of the county of Santa Fe, as agent of the city of Santa Fe, "for the use and purposes of the people of the county of Santa Fe and the city of Santa Fe in said county, and to be used and owned by them as a public street, alley-way or road," a strip of land on each side of their division line, extending from San Francisco street southerly to El Rio Chiquito, and fourteen feet and six inches in width, five feet and eight inches of which was the land of Luis Gold, and eight feet and ten inches was the land of Julian Perea; and said contract further recited "to have and to hold the said party of the second part, for the uses and purposes above set forth, the said fourteen and one-half feet of land, passing over the property of the said party of the first part, from and to the limits as above recited, and its successors forever."

From the time of the making and delivery of this contract up to the twenty-fourth day of June, 1899, the said strip of land was used and occupied as a public street under the provisions of said contract.   On said last mentioned date the city council of the city of Santa Fe did, by ordinance duly passed, approved and published, abandon said property as a street, and bargained and sold said strip of land to the defendant herein, John H. Blain, by deed duly executed by said city.   That subsequently said street was fenced in, lumber and materials piled thereon, and Blain entered into the possession thereof under his deed from the city.   Demand of possession of the premises in question was duly made of the said Blain on behalf of the plaintiff, Staab.

Subsequently to the contract of August, 1871, title to the lands and premises on the easterly side of the street in question, by several deeds of conveyance, through various parties, became vested in the plaintiff herein, Abraham Staab, before

the commencement of this action.    That all of said deeds of conveyance bounded the premises conveyed on the westerly side thereof by the street or alley-way in question.

A. B. RENEHAN for plaintiff in error, EDWARD L. BARTLETT for defendant in error.

McMILLAN, J.—The civil law of Mexico .was the law in force in the Territory of New Mexico at the time of the execution and delivery of the contract made by Gold and Perea setting apart the lands and premises in question for the uses and purposes of the people of the city and county of Santa Fe, and to be used by them as a public street.    This contract must, therefore, be tested by the rule which obtained in such matters under the civil law.    McCracken v. Hayward, 2 How. 612.

It is true that the sovereignty and title of the Territory continued in all streets, roads, alleys and public places, where the public domain was disposed of, with or without reservation, but not so where a municipality sought to acquire title to, or rights in property for street or highway purposes. In all such cases the terms of the grant limit the title.

CIVIL law: servitude.

A servitude is as well known to the civil law as an easement is to the common law; and servitudes were acquired, under the civil law, in the same manner as other property.

It is also laid down as one of the tenets of the civil law, that he who is the owner of a thing, and has the free administration of it, may grant a servitude; and that a servitude may be established on conditions and for a limited time.    Schmidt's Civil Law of Mexico, Arts. 376, 390, 394.

The civil law also provides that a servitude is extinguished by its voluntary relinquishment, or by the fulfillment of the condition upon which it depends.    Schmidt's Civil Law of Mexico, Art. 395, secs. 2, 4.

In the case at bar, the contract under which the city of Santa Fe took possession of the premises in question, and used it for street purposes from 1871 down to 1899, is a carefully drawn instrument, clearly intended to grant an easement or servitude, and to limit the use

of the premises described therein to street pur-
poses. The language used is susceptible of

no other construction. Fully quoted, the pro-
visions and limitations are as follows: "And
by these presents sells, bargains and conveys, in favor of said
party of the second part, for the use and purposes of the people
of the county and city of Santa Fe, and to be used and owned
by them as a public street, alley-way or road forever. To
have and to hold the said party of the second part for the
use and purposes above set forth, the said fourteen and one-
half feet of land, passing over the property of the said party of
the first part, from and to the limits as above recited, and its
successors forever."

The contracting parties, Gold and Perea, granted only the
right to use and pass over their property for street purposes,
and nothing more, thereby creating a limited servitude. The
contract did not convey a fee, but created a servitude under the
civil law, a right to pass over the lands of the grantors, along
the strip specifically described, for street purposes. There
can be no ambiguity or doubt touching the language used, and
the maxim of the civil law need not be invoked which provides
that, where doubt arises as to the meaning of a contract, the
intentions of the parties are to govern, rather than the strict
signification of the language employed.

The abandonment of the street by resolution of the city
council of the city of Santa Fe, duly adopted,
approved and published, operated to extinguish
the servitude. "An easement in a piece of land

laid out and used as a public highway, is ex-
tinguished on its vacation by legislative authority." Wheeler
v. Clark, 58 N. Y. 267.

The abandonment was supplemented, on the part of the
city, not only by a conveyance of the premises to a third party,
but by fencing it, and by its use and occupation for purposes
inconsistent with its use as a public street. "Ceasing to use
an easement, accompanied by an act clearly indicating an in-
tention to abandon the right, has the same effect as a release."
Suydam v. Dunton, 84 Hun. 506.

The grant under the contract in question being only a
civil law servitude or a common law easement, it follows that

the fee to the fourteen and one-half feet remained in Gold and Perea, in the same proportions and to the same extent as it existed at the time of the making of the contract, to wit, five feet and eight inches in Gold, and eight feet and ten inches in Perea.  The title which Gold had in the premises in question, and that adjoining the street on the east, having passed, by various mesne conveyances, to the plaintiff Staab, vested in Staab all of the title held by Gold in the street or alley-way, and no more.  And notwithstanding several of these conveyances were bounded on the west by the street in question, it did not carry the boundary line to the center of the street, as the grantor could convey no more than that to which he held title. "A deed bounding upon a highway prima facie carries the title to the center of the road, unless it appears to have been owned by another, in which case the language found in the deed is satisfied by a title extended only to the roadside." Hoag v. Pierce, 65 Hun. 424.

Gold's title was limited as to boundary, on the west, by "the old wall of the heirs of Manuel Sanchez," which appears as a stipulated fact herein, and as also appears by the deed from Gold to Zadoc Staab, the grantor of the plaintiff Staab herein. "Where the bed of an ancient road belongs to the government, a conveyance of land bounding thereon does not carry title to the center of the roadway." Dunham v. Williams, 37 N. Y. 251.

Staab's title is, therefore, limited by the description in the deed from Luis Gold to Zadoc Staab, wherein the premises are described as "including all the property lying between the old wall of the property of Probst Kirchner on the east, and the old wall of the property of the heirs of Manuel Sanchez, deceased, on the west, being the same property sold by William Breeden, master in chancery, under decree of the district court for said county of Santa Fe, on the eighteenth day of June, 1873." This old wall was in the street five feet and eight inches, and to this extent Gold had title at the time he joined with Perea in the contract granting the servitude which authorized the city to open and maintain the street in question.  The description quoted clearly limits the boundary of the premises on the west.  "Where a deed describes the premises conveyed as the same land

conveyed by a third person to the grantor, it conveys only the estate that the grantor derived from such third person." Kennedy v. Farly, 82 Hum. 227.

The street having been abandoned by the city, and the servitude thereby extinguished, Staab, as the owner of the fee was entitled to the immediate possession of the five feet and eight inches on the easterly side of the street, and defendant Blain being in possession and claiming title thereto under the deed from the city, ejectment would lie. "One who has title to the land of a public highway, subject to the public easement, may maintain ejectment therefor by showing that the defendant has taken exclusive possession, or imposed upon the land some burden inconsistent with the public easement." Westlake v. Koch, 134 N. Y. 58.

SERTITUDE: extinguishment: effect of.

The judgment herein will, therefore, be modified by changing so much of the description of the land therein described as fixes the width of the premises, at "seven feet and three inches," to "five feet and eight inches;" and when so modified and changed, the judgment is in all things affirmed.

Mills, C. J., Parker and Crumpacker, JJ., concur.

---

[884. February 26, 1901.]